Richard S. Heller, J.
This claim in the amount of $200,000 arises from an appropriation pursuant to section 30 of the Highway Law, as made applicable by article 5 of title 1 of the Public Authorities Law.
Title 1 of article 5 of the Public Authorities Law is the “Power Authority Act” and the lands taken were for the improvement and development of the International Rapids Section of the St. Lawrence River. The right to appropriate the land herein has been established even though it is incidental to navigation or power development. (Cuglar v. Power Auth. of State of N. Y., 3 N Y 2d 1006.)
There were two appropriations. The first, as shown on Map No. 322, Parcel No. 325, St. Lawrence River Project, St. Lawrence County, was a parcel taken from the center of claimant’s land lying south of Route 37-B containing 15.55± acres. The appropriation map was filed in the office of the Clerk of St. Lawrence County on June 23, 1955.
The second appropriation, as shown on Map 389, Parcels Nos. 408, 520 and 521, St. Lawrence River Project, St. Lawrence County, took the remaining land of the claimant together with all buildings thereon. This appropriation map was filed with the Clerk of St. Lawrence County on October 18, 1955. Parcel No. 408 consisted of 5.32± acres of vacant land north of Route *1048 37-B. Parcel 520 consisted of 19.85± acres of land south of Route 37-B upon which all of claimant’s buildings were located. Parcel 521 consisted of 31.15± acres lying south of Parcel 325, the first appropriated land.
Prior to the appropriation the claimant was the sole owner of 71.87± acres of land in the town of Louisville, St. Lawrence County, New York, of which 66.55* acres bordered the southern boundary of the River Road known as Route 37-B and the eastern boundary of a lesser highway known as Browning Cross Road. The remaining 5.32* acres were north of the northerly boundary of Route 37-B and east of a trailer camp located on adjacent property.
The land south of Route 37-B was level and at grade with Route 37-B and the Browning Cross Road. The land north of Route 37-B was at grade with Route 37-B and sloped gradually to the north and the St. Lawrence River. Claimant had 1347.24* feet of frontage on Route 37-B, 421.80* feet on the north and 925.44* feet on the south. In addition, claimant had 3461.33* feet of frontage on Browning Cross Road.
The buildings on claimant’s land at the time of the appropriation were all located south of Route 37-B and all were taken.
The house, which faced north with the St. Lawrence River in full view about 850 feet distant, was a nine-room and bath structure divided for two apartments. It had a full dirt cellar with an oil-fired furnace but other heating facilities were required. The running water supply was from a drilled well and hot water was available for the two kitchens and the bath. It was wired for electricity.
The house was at least 70 years old and in a fair state of repair. It had been rented prior to and at the time of the appropriation. The house was partly two stories and partly one and a half stories. The front portion was 25 by 27 fe 3t, the back portion was 42 feet 6 inches by 27 feet 8 inches. There was a 30-foot front porch and a 32-foot porch on the easterly side of the house.
A tarvia driveway led from Route 37-B to the barn of claimant. This drive continued in front of the barn and in front of the milkhouse which adjoined the barn. An ornamental fence ran on the east side of the house. There were trees and shrubs near the house.
The main barn on the premises was directly behind the house. It was a wood frame barn 30 by 106 feet and was 35 feet high. In the front portion were 26 stanchions and in the rear were 20 more stanchions. The floor was cement and there were doors *1049 on the west and east at the center as well as north and south for additional access. The barn was in good condition.
Connected to the barn at the northeast corner was a milk house built by the present owner since the acquisition in 1950. The milkhouse was serviced by hot and cold running water and electricity. Also connected to the barn were a wood silo and a horse shed. The horse shed was 12 by 34 feet and 12 feet high. The milkhouse was in excellent condition, the silo and horse shed in good condition.
A new implement shed also had been built since 1950. This was of wood construction and was 29 by 80 feet and 14 feet high. It was in excellent condition. A poultry house 12 by 24 feet in poor condition was also located on the premises.
Claimant acquired the property appropriated in 1950 and paid approximately $10,500, which price included some items of personal property. Improvements made to the property between 1950 and 1954 more than doubled the investment of claimant as is evidenced by his records and the great increase in assessment on the buildings.
Since 1950 the claimant used the appropriated property for the buying and selling of cattle. It should be noted that these sales were on an individual basis and not as commission or auction sales. As a necessary part of his business, the production of milk was also an income producing factor.
In 1951, the first full year of claimant’s operation gross receipts from the business conducted on the appropriated land were $295,642 with a net return of $9,532 and a net return before depreciation of $12,250. In 1952, the corresponding figures were $309,427, $7,853 and $11,105. In 1953, $342,015, $7,476 and $11,098. In 1954, $239,179, $8,257 and $11,491. In 1955, $97,000, $5,741 and $9,751. In 1955 claimant had the property only until June 25 and the months of January, February, March and April would not reflect the best months for the buying and selling of cattle.
The “Seaway” became a reality in the Spring of 1954 when the Congress of the United States became committed to the project. Prior to that time there had been an economic growth at and near Massena although the greatest activity took place after the action by the United States Government.
Claimant could not at any time have definitely known that his land would have been included in any navigation or power development project because his land was situated above the practical flood line of the St. Lawrence River. To deny him some enhancement value because of his location, would deny him just compensation. (United States v. Miller, 3.17 U. S. 369.)
*1050 Both parties hereto have used expert witnesses to establish their contentions. Market value, comparable sales, reproduction cost less depreciation and obsolescence, cost plus improvements and other opinions have been expressed. Needless to say, these opinions vary greatly as to the value and as to the best use of the property.
All of the State’s witnesses are emphatic that the property taken had no commercial value even though a business doing agross of $300,000 annually was conducted thereon. Only one of the experts would concede a possibility of residential development and all stated that the best available use was for a farm and at the same time testified that it could not be operated successfully as a farm.
The claimant’s witnesses had a variety of uses for the property. These included a cattle auction salesroom, a commercial and residential development, a residential subdivision and a trailer park.
It is well settled that the claimant is entitled to a fair market value of his property put to its best available use. That use cannot be so speculative as to cast doubt upon the possibility of fulfillment.
In considering its best available use the court has viewed the property; it has taken into consideration the use at the time of the appropriation; the practical potential use in line with the growth of the community and the testimony of the witnesses.
The court finds the best available use of the claimant’s land at the time of the appropriation as follows:
(1) As to the frontage on Route 37-B to the south and for a depth of 400 feet, the best available use was for commercial purposes.
(2) As to the frontage on Route 37-B to the north, the best available use of the land was for commercial purposes.
(3) As to the land fronting on Browning Gross Road 400 feet south of Route 37-B and all other land, the best available use was for residential purposes.
It is the opinion of the court that the fair and reasonable market value of the claimant’s property at the time of the appropriation was $39,000 and that claimant has been damaged in that amount.
Claimant is entitled to an award in the sum of $39,000, with interest on $4,000 from June 23, 1955 to December 23, 1955 and from March 9, 1956 to the date of entry of judgment, and with interest on $35,000 from October 18, 1955 to the date of entry of judgment.
*1051 The descriptions of the property accompanying the maps filed with the claim are hereby adopted as accurate.
The foregoing constitutes the written and signed decision of the court upon which judgment may be entered. (Civ. Prac. Act, § 440.)